**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

**TINA G.,**

**Plaintiff,**

**v.** **Case No.: 2:25-cv-00595**

**FRANK BISIGNANO,**
**Commissioner of the**
**Social Security Administration,**

**Defendant.**

## PROPOSED FINDINGS AND RECOMMENDATIONS

This action seeks review of the decision of the Commissioner of Social Security ("Commissioner") denying Claimant's application for a period of disability and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401–433. The matter is assigned to the Honorable Irene C. Berger, United States District Judge, and was referred to the undersigned United States Magistrate Judge by standing order for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B).

Presently pending before the Court are the parties' briefs seeking judgment on the pleadings. (ECF Nos. 4, 5, 6). The undersigned has fully considered the administrative record and the arguments of counsel. For the reasons set forth below, the undersigned **RECOMMENDS** that the Commissioner's decision be **AFFIRMED**, and this action **DISMISSED.**

## I. Procedural History

On March 8, 2022, Tina G. ("Claimant") protectively filed an application for DIB, alleging disability beginning on March 5, 2022, due to chronic shortness of breath/previous lobectomy, COPD, depression and anxiety disorders, chronic right side pain /2 hernias and GERD, anemia caused by radiation treatment, chronic right arm pain and weakness, chronic migraines, and osteoarthritis with chronic joint pain. (Tr. 292, 355). After the claim was denied initially and on reconsideration, Claimant appeared and testified at a hearing before an Administrative Law Judge ("ALJ") on November 12, 2024. (Tr. 127-52). By decision dated December 12, 2024, the ALJ found that Claimant was not disabled within the meaning of the Social Security Act. (Tr. 91-119). The Appeals Council denied Claimant's request for review. (Tr. 1-7). Accordingly, the ALJ's decision became the final decision of the Commissioner.

Claimant timely filed the present civil action, seeking judicial review pursuant to 42 U.S.C. § 405(g). (ECF No. 1). The Commissioner filed a Transcript of the Administrative Proceedings. (ECF No. 3). Claimant thereafter filed a Brief seeking judgment on the pleadings, (ECF No. 4), and the Commissioner filed a Brief in Support of Defendant's Decision, (ECF No. 5), to which Claimant filed a reply, (ECF No. 6). Consequently, the matter is fully briefed and ready for resolution.

## II. Claimant's Background

Claimant was 61 years old on her alleged onset date and 64 years old on the date of the ALJ's decision. She communicates in English, has a high school education, and previously worked as a customer service representative. (Tr. 149, 354, 357).

## III. Summary of ALJ's Decision

Under 42 U.S.C. § 423(d)(5), a claimant seeking disability benefits has the burden of proving a disability. *See Blalock v. Richardson,* 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a five-step sequential evaluation process for the adjudication of disability claims. If an individual is found "not disabled" at any step of the process, further inquiry is unnecessary, and benefits are denied. 20 C.F.R. § 404.1520. The first step in the sequence is determining whether a claimant is currently engaged in substantial gainful employment. *Id.* § 404.1520(b). If the claimant is not, then the second step requires a determination of whether the claimant suffers from a severe impairment. *Id.* § 404.1520(c). If severe impairment is present, the third inquiry is whether this impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4 (the "Listing"), found at 20 C.F.R § Pt. 404, Subpt. P, App. 1. *Id.* § 404.1520(d). If the impairment does, then the claimant is found disabled and awarded benefits.

However, if the impairment does not meet or equal a listed impairment, the adjudicator must determine the claimant's residual functional capacity ("RFC"), which is the measure of the claimant's ability to engage in substantial gainful activity despite the limitations of his or her impairments. *Id.* § 404.1520(e). After making this determination, the fourth step is to ascertain whether the claimant's impairments prevent the performance of past relevant work. *Id.* § 404.1520(f). If the impairments do prevent the performance of past relevant work, then the claimant has established a *prima facie* case

of disability, and the burden shifts to the Commissioner to demonstrate, as the fifth and final step in the process, that the claimant is able to perform other forms of substantial gainful activity, when considering the claimant's remaining physical and mental capacities, age, education, and prior work experiences. 20 C.F.R. § 404.1520(g); *see also McLain v. Schweiker,* 715 F.2d 866, 868-69 (4th Cir. 1983). The Commissioner must establish two things: (1) that the claimant, considering his or her age, education, skills, work experience, and physical shortcomings has the capacity to perform an alternative job, and (2) that this specific job exists in significant numbers in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the SSA "must follow a special technique at each level in the administrative review process," including the review performed by the ALJ. 20 C.F.R. § 404.1520a(a). Under this technique, the ALJ first evaluates the claimant's pertinent signs, symptoms, and laboratory results to determine whether the claimant has a medically determinable mental impairment. *Id.* § 404.1520a(b). If an impairment exists, the ALJ documents such findings. Second, the ALJ rates and documents the degree of functional limitation resulting from the impairment according to criteria specified in 20 C.F.R. § 404.1520a(c). Third, after rating the degree of functional limitation from the claimant's impairment(s), the ALJ determines the severity of the limitation. *Id.* § 404.1520a(d). A rating of "none" or "mild" in the four functional areas of understanding, remembering, or applying information; (2) interacting with others; (3) maintaining concentration, persistence, or pace; and (4) adapting or managing oneself will result in a finding that the impairment is not severe unless the evidence indicates that there is more than minimal limitation in the claimant's ability to do basic work activities. *Id.* § 404.1520a(d)(1). Fourth, if the claimant's impairment is

deemed severe, the ALJ compares the medical findings about the severe impairment and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment meets or is equal to a mental disorder described in the Listing. *Id.* § 404.1520a(d)(2). Finally, if the ALJ finds that the claimant has a severe mental impairment, which neither meets nor equals a listed mental disorder, the ALJ assesses the claimant's residual mental functional capacity. *Id.* § 404.1520a(d)(3). The regulations further specify how the findings and conclusion reached in applying the technique must be documented by the ALJ, stating:

> The decision must show the significant history, including examination and laboratory findings, the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each functional areas described in paragraph (c) of this section.

20 C.F.R. § 404.1520a(e)(4).

Here, the ALJ found as a preliminary matter that Claimant met the insured status requirements for DIB through March 31, 2027. (Tr. 97, Finding No. 1). At step one, the ALJ determined that Claimant had not engaged in substantial gainful activity since the alleged onset date. (*Id.*, Finding No. 2). At step two, the ALJ found that Claimant had the following severe impairments: hernia; degenerative disk disease; chronic obstructive pulmonary disease (COPD), status post lung cancer with radiation therapy and lobectomy; coronary artery disease; osteoporosis; and osteoarthritis. (*Id.*, Finding No. 3). The ALJ also found that Claimant had several non-severe impairments, including, as relevant to Claimant's challenge, major depressive disorder, anxiety, unspecified trauma and stressors related disorder, and somatic symptom disorder with predominant pain. (Tr. 97-100).

At step three, the ALJ concluded that Claimant did not have an impairment or

combination of impairments that met or medically equaled a listed impairment. (Tr. 101, Finding No. 4). Before proceeding to step four, the ALJ assessed Claimant's RFC and found that Claimant could perform sedentary exertional work with postural and environmental limitations. (Tr. 102, Finding No. 5). At step four, the ALJ determined that Claimant could perform her past relevant work as a customer service representative. (Tr. 111, Finding No. 6). Accordingly, the ALJ concluded that Claimant was not disabled. (*Id.*, Finding No. 7).

## IV. **Claimant's Challenge to the Commissioner's Decision**

Claimant asserts a single assignment of error. She contends that the ALJ failed to perform the "more detailed assessment" required by SSR 96-8p to explain why no mental limitations were included in the RFC assessment, despite finding that she had mild mental limitations in the paragraph B criteria. (ECF No. 4 at 1, 3-5). Claimant further argues that the error is not harmless because the ALJ found that she could return to her past skilled work as a customer service representative without explaining how her mild mental limitations affected her ability to perform the mental demands of that position. (*Id.* at 8-10). She maintains that the ALJ's failure to explain the omission of mental limitations from the RFC precludes meaningful judicial review and requires remand. (*Id.* at 10-11).

The Commissioner responds that substantial evidence supports the ALJ's determination that Claimant's mental impairments were non-severe and did not result in work-related mental functional limitations. (ECF No. 5 at 5-6). The Commissioner argues that the ALJ adequately considered Claimant's mental impairments by evaluating the paragraph B criteria at step two; discussing Claimant's function reports, consultative examination, treatment records, and daily activities, as well as the prior administrative

findings, and concluding that no mental RFC restrictions were warranted. (*Id.* at 9-13). According to the Commissioner, the ALJ's decision, when read as a whole, adequately explains why no mental limitations were included in the RFC assessment and permits meaningful judicial review. (*Id.* at 8-13).

In reply, Claimant argues that the Commissioner mischaracterizes her assignment of error. (ECF No. 6 at 1-2). She clarifies that she is not arguing an ALJ must always include mental limitations in the RFC whenever mild paragraph B limitations are found. (*Id.* at 2). Rather, she contends that the ALJ failed to explain how he considered those limitations after step two and why they did not warrant corresponding mental restrictions in the RFC. (*Id.* at 2-4). Claimant further argues that the authorities relied upon by the Commissioner are distinguishable and that the ALJ's fleeting references to her mental impairments during the RFC discussion did not satisfy SSR 96-8p's requirement for a more detailed assessment. (*Id.* at 3-5). She therefore maintains that the ALJ's decision leaves the Court to speculate why the mental limitations were omitted from the RFC, particularly given the ALJ's finding that she could return to her past skilled work. (*Id.* at 5).

## V. <u>Relevant Evidence</u>

The undersigned thoroughly examined the entire administrative record. The evidence that is most pertinent to Claimant's challenge is summarized below.

### *A. Treatment Records*

Throughout the relevant period, Claimant's primary care provider, Nicholas Smith, P.A., monitored her mixed anxiety and depressive disorder, managed her medications, and documented unremarkable mental status findings. PHQ-2 screenings remained negative, and mental status examinations revealed Claimant's good judgment;

normal mood and affect; and the fact that Claimant was alert and active, oriented in all spheres, and exhibited normal recent and remote memory. (Tr. 939–41, 946–47, 1036–38, 1044–46, 1138–39, 1144–45, 1518–20). Smith repeatedly noted that Claimant was doing well on Cymbalta and was feeling better, although at the August 2024 visit, he observed that she had experienced some depression related to family issues involving her son. (Tr. 940, 947, 1037, 1045, 1519). Smith continued Claimant's medications at each visit. (Tr. 941, 947, 1038, 1046, 1145, 1520).

***B. Claimant's Statements***

In an April 2022 Function Report, Claimant reported that she lived alone and generally spent her days attending to her personal hygiene, feeding herself and her pets, and, when feeling better, performing light housekeeping, grocery shopping, or attending doctor's appointments. (Tr. 378). She stated that she prepared simple meals daily, including frozen dinners, cereal, canned soup, and sandwiches, because prolonged standing and cooking caused pain. (Tr. 379). Claimant also reported performing light household chores and laundry with frequent rest breaks, shopping in stores and online approximately once a week, driving, and managing her own finances. (Tr. 379–80). She indicated that she used daily medication containers because she could not remember what or when to take her medications and had begun using automatic bill pay because she sometimes forgot when payments were due. (Tr. 379–80). Claimant further reported that her impairments affected her memory, understanding, ability to follow instructions, concentration, and ability to complete tasks. (Tr. 382). She stated that she could pay attention for approximately thirty minutes and did not always finish what she started. (Tr. 382). Claimant reported that she generally followed written instructions well if she wore reading glasses and took her time, but needed to write down spoken instructions if they

involved more than one or two steps. (Tr. 382). She indicated that she got along with authority figures, denied any history of being fired because of problems getting along with others, but reported that she did not handle stress or changes in routine well. (Tr. 382–83). She also denied problems getting along with family, friends, neighbors, or others. (Tr. 381).

In a September 2023 Function Report, Claimant again reported that she lived alone and spent her days taking her medications, eating breakfast, bathing, getting dressed, using a nebulizer, caring for her pets, performing light housework, running errands, watching television, checking social media, calling family members, paying bills, preparing simple meals, resting as needed because of pain, using a heating pad, taking prescription medication, and retiring around 11:00 p.m. (Tr. 423). She stated that she cared for her pets by feeding them, providing fresh water, and performing light grooming. (*Id.)*. Claimant also reported that she prepared simple meals daily, performed light housekeeping and laundry with frequent rest breaks, shopped in stores and online, drove, and managed her own finances. (Tr. 424–25). She stated that she used daily medication containers for her morning and evening medications. (Tr. 424). Claimant alleged that her impairments affected her understanding, ability to follow instructions, memory, concentration, and ability to complete tasks. (Tr. 427). She stated that she could pay attention for approximately thirty minutes and did not always finish what she started. (*Id.)*. Claimant stated that she did not follow written instructions well because she sometimes forgot ingredients and had difficulty seeing recipes. (*Id.)*. She also reported that she generally wrote down spoken instructions so that she could refer back to them. (*Id.)*. Claimant confirmed that she generally got along with authority figures, although she would stand up for herself if she believed she was treated disrespectfully. (*Id.)*. She

denied ever being fired because of problems getting along with others. (*Id.)*. Claimant further reported that she did not handle stress well because it caused migraines, neck pain, shoulder pain, and nervousness and it was difficult for her to adjust to changes in routine. (Tr. 428). She denied problems getting along with family, friends, neighbors, or others. (Tr. 426).

During the administrative hearing, Claimant testified that she last worked in March 2022 as a customer service representative for Frontier Communications where she spent the workday seated at a computer answering back-to-back customer calls regarding repairs, billing, and sales. She testified that she stopped working because of numerous physical impairments, including COPD, pulmonary fibrosis, coronary artery disease, lumbar pain radiating into her right leg, macular degeneration, migraines, and the residual effects of multiple surgeries. (Tr. 133-40). She explained that shortness of breath limited her ability to walk more than ten to fifteen minutes before needing to rest, back pain limited her ability to stand for more than approximately fifteen minutes and sit for only twenty to thirty minutes, and she frequently needed to lie down throughout the day because of pain. (*Id.* at 137-41). Claimant further testified that she experienced difficulty lifting and grasping objects, opening jars, and using her right arm because it tired easily. (*Id.* at 142-47).

Regarding her mental impairments, Claimant testified that she took Cymbalta for depression. (Tr. 143). She expounded that she lived alone, missed her granddaughter, had little support from her son, and sometimes did not want to get out of bed in the morning. (*Id.* at 143-44). Claimant also testified that her memory and concentration had declined, explaining that she frequently forgot why she entered a room, misplaced items, could not remember people's names without writing them down, and sometimes confused the days

of the week and her doctors' appointments. (*Id.* at 144). Finally, Claimant testified that chronic pain interfered with her concentration and that the stress of her former customer service position contributed to her inability to continue working because she regularly dealt with irate customers and became extremely stressed by the end of the workday. (*Id.* at 145-46).

### *C. Consultative Examination and Agency Findings*

On January 3, 2023, Claimant underwent a consultative psychological evaluation performed by Tara Bias, M.A. (Tr. 911). Claimant reported that she was unable to continue working because she could not keep up with the fast-paced work environment, was forgetting things, found technology mentally draining, and experienced anxiety. (*Id.*). She also reported chronic right-sided pain following lung cancer treatment, arthritis, tingling in her feet, hands, and arms, and limitations in the use of her right arm. (*Id.*). Claimant stated that complications from her health problems, pain, functional limitations, trauma symptoms, anxiety, and depression prevented her from working. (Tr. 912).

Claimant reported depressive symptoms, including depressed mood, sadness, sleep difficulties, hopelessness, irritability, and a history of tearfulness. (*Id.*). Although she denied current suicidal ideation, she admitted experiencing suicidal thoughts in the past. (*Id.*). Claimant also reported a history of childhood physical and sexual abuse and domestic violence and stated that she experienced nightmares and anxiety. (*Id.*). Bias noted that chronic pain was a prominent focus of the evaluation and that Claimant reported sadness, worry, anxiety, and frustration because she could no longer work or perform activities at her pre-injury level of functioning. (*Id.*).

During the mental status examination, Claimant appeared casually dressed with proper hygiene. (Tr. 913). She was cooperative and maintained good eye contact. (*Id.*).

Her speech was coherent and connected. (*Id.)*. Claimant was oriented to person, time, place, and circumstance. (*Id.)*. Her mood was dysphoric, and her affect was congruent with her mood. (*Id.)*. Her thought processes were understandable and connected, and there was no evidence of delusions, paranoia, obsessive thoughts, compulsive behaviors, or unusual perceptual experiences. (Tr. 913–14). Her judgment was within normal limits, insight was fair, and psychomotor behavior was within normal limits. (Tr. 914). Claimant denied suicidal and homicidal ideation. (*Id.)*. Her immediate and recent memory were normal, remote memory was within normal limits, concentration was normal, persistence was within normal limits, and pace was somewhat slow during the evaluation. (*Id.)*. Bias opined that Claimant's social functioning during the evaluation was mildly impaired based on her dysphoric mood. (*Id.)*.

Bias diagnosed Claimant with major depressive disorder, recurrent, moderate; unspecified trauma and stressor related disorder; and somatic symptom disorder with predominant pain, moderate. (Tr. 914–15). Bias explained that the diagnosis of major depressive disorder was supported by Claimant's reported depressed mood, sadness, sleep difficulties, hopelessness, irritability, and history of tearfulness. (Tr. 914). Bias further explained that the trauma and stressor related disorder diagnosis was based on Claimant's history of childhood physical and sexual abuse, domestic violence, nightmares, and anxiety. (*Id.)*. Finally, Bias explained that the somatic symptom disorder diagnosis was based on Claimant's chronic pain and the resulting disruption in her social and occupational functioning. (Tr. 915). Bias also noted that Claimant lived alone, managed her finances, performed her personal care and household chores independently, cared for her pets, maintained her medical appointments, and appeared capable of managing her own funds. (*Id.)*.

On January 9, 2023, psychologist Jeff Boggess, Ph.D., performed a psychiatric review technique (PRT) at the initial level of administrative review. Based on his review of Claimant's records, Boggess assessed that Claimant had a mildly limited ability to interact with others, but no limitation understanding, remembering, or applying information; concentrating, persisting, or maintaining pace; or adapting or managing herself. (Tr. 163). This assessment was affirmed by psychologist Jeff Harlow, Ph.D., on October 18, 2023. (Tr. 175).

## VI. Scope of Review

The issue before the Court is whether the final decision of the Commissioner is based upon an appropriate application of the law and is supported by substantial evidence. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In *Blalock v. Richardson*, the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") defined "substantial evidence" to be:

> [E]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

483 F.2d 773, 776 (4th Cir. 1973) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). When examining the Commissioner's decision, the Court does not conduct a *de novo* review of the evidence to ascertain whether the claimant is disabled. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (citing *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Instead, the Court's role is limited to insuring that the ALJ followed applicable Regulations and Rulings in reaching his or her decision, and that the decision is supported by substantial evidence. *Hays*, 907 F.2d at 1456. If substantial evidence exists, the Court must affirm the Commissioner's decision "even should the court disagree

with such decision." *Blalock*, 483 F.2d at 775.

## VII. <u>Discussion</u>

Claimant argues that the ALJ erred by failing to include any mental limitations in the RFC assessment despite finding mild limitations in all four paragraph B functional areas at step two. Specifically, Claimant contends that the ALJ failed to perform the "more detailed assessment" required by SSR 96-8p to explain why no mental limitations were included in the RFC assessment. (ECF No. 4 at 3-11). The Commissioner responds that the ALJ adequately considered Claimant's non-severe mental impairments, that the decision must be read as a whole, and that substantial evidence supports the determination that no work-related mental limitations were warranted. (ECF No. 5 at 5-13). The undersigned agrees with the Commissioner.

SSR 96-8p provides that the paragraph B findings used to evaluate the severity of a claimant's mental impairments at steps two and three "are not an RFC assessment" because the RFC assessment "requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C." SSR 96-8p, 1996 WL 374184, at *4. Likewise, the regulation requires an ALJ to consider all medically determinable impairments, including those that are not severe, when assessing a claimant's RFC. 20 C.F.R. § 404.1545(a)(2). However, as Claimant acknowledges, neither SSR 96-8p nor the regulations require an ALJ to include mental limitations in the RFC whenever mild limitations are found under the paragraph B criteria. Rather, the pertinent inquiry is whether the ALJ adequately considered the claimant's non-severe mental impairments and sufficiently explained why additional work-related mental restrictions were or were not warranted.

The Fourth Circuit's decisions are consistent with that principle. In *Mascio v.*

*Colvin*, the Fourth Circuit explained that remand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions or where deficiencies in the ALJ's analysis frustrate meaningful judicial review. *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015). However, the court also recognized that remand is not required simply because an ALJ does not perform an explicit function-by-function analysis in every case. *Id.* Rather, the dispositive question is whether the reviewing court can meaningfully evaluate the ALJ's reasoning. *Id.*

Similarly, in *Shinaberry v. Saul*, the Fourth Circuit rejected a categorical rule requiring particular RFC limitations whenever mental impairments are present, emphasizing that an ALJ may adequately account for mental limitations by explaining how the evidence supports the RFC finding. *Shinaberry v. Saul*, 952 F.3d 113, 121 (4th Cir. 2020). More recently, in *Britt v. Saul*, the Fourth Circuit explained that an ALJ is required to consider non-severe impairments when formulating the RFC but is not necessarily required to repeat the step-two discussion during the RFC analysis where the decision, read as a whole, adequately explains the ALJ's reasoning. *Britt v. Saul,* 860 F. App'x 256, 262 (4th Cir. 2021). Thus, the Court's task is not to determine whether the ALJ could have discussed Claimant's mental impairments in greater detail, but whether the decision permits meaningful judicial review and is supported by substantial evidence.

Claimant principally relies upon district court decisions in *Shank v. Saul*, *Jones v. Kijakazi*, *Karen W. v. Kijakazi*, *Mary S. v. Kijakazi*, *Brenda H. v. O'Malley*, *Harold S. v. O'Malley*, and *Johnson v. King*, arguing that remand is required because the ALJ failed to explain, after step two, why the mild paragraph B limitations did not result in corresponding mental limitations in the RFC assessment. (ECF No. 4 at 6-11). Those decisions are distinguishable.

The Court agrees with Claimant that SSR 96-8p requires more than the paragraph B analysis performed at steps two and three. As Claimant correctly observes, the paragraph B findings are not themselves an RFC assessment, and the RFC determination requires a "more detailed assessment" of a claimant's mental functioning. SSR 96-8p, 1996 WL 374184, at *4. Thus, the question before the Court is not whether the ALJ was required to assess mental RFC limitations because he found mild paragraph B limitations. Rather, the question is whether the ALJ adequately explained how he considered those limitations in formulating Claimant's RFC.

In *Shank*, the Court concluded that the ALJ's boilerplate statement that the RFC reflected the paragraph B findings did not satisfy SSR 96-8p because, after finding a mild limitation in adapting or managing oneself, the ALJ never explained why no corresponding mental limitation appeared in the RFC assessment. *Shank v. Saul*, No. 3:20-cv-00444, 2021 WL 2767063, at *8-9 (S.D.W. Va. June 11, 2021), adopted, 2021 WL 2744550 (S.D.W. Va. July 1, 2021). Likewise, in *Jones*, the Court observed that the ALJ found mild paragraph B limitations but "did not discuss, or even mention, Claimant's mental limitations at any subsequent steps of the sequential evaluation," leaving the Court unable to determine how those findings were considered in assessing the claimant's RFC. *Jones v. Kijakazi*, No. 5:21-cv-00634, ECF No. 18 at 19-23 (S.D.W. Va. Sept. 22, 2022), adopted, ECF No. 21 (S.D.W. Va. Nov. 28, 2022).

The Court reached the same conclusion in *Karen W.*, *Mary S.*, *Brenda H.*, *Harold S.*, and *Johnson*, each time emphasizing that the ALJ either never returned to the claimant's mental impairments after step two or otherwise failed to articulate how the paragraph B findings were considered in formulating the RFC. *Karen W. v. Kijakazi*, No. 2:23-cv-00044, 2023 WL 6289991, at *7-8 (S.D.W. Va. July 31, 2023), adopted, 2023 WL

6282856 (S.D.W. Va. Sept. 26, 2023); *Mary S. v. Kijakazi*, No. 2:23-cv-00302, 2023 WL 8911889, at *7-9 (S.D.W. Va. Aug. 24, 2023), adopted, 2023 WL 8910958 (S.D.W. Va. Dec. 28, 2023); *Brenda H. v. O'Malley*, No. 2:23-cv-00284, 2024 WL 628008, at *8-9 (S.D.W. Va. Jan. 26, 2024), adopted, 2024 WL 619440 (S.D.W. Va. Feb. 12, 2024); *Harold S. v. O'Malley*, No. 2:23-cv-00422, 2024 WL 2785034, at *6-8 (S.D.W. Va. May 7, 2024), adopted, 2024 WL 2776265 (S.D.W. Va. June 4, 2024); *Victoria J. v. Bisignano*, No. 2:24-cv-00600, ECF No. 7 at 13-16 (S.D.W. Va. Aug. 18, 2025), adopted, ECF No. 8 (S.D.W. Va. Oct. 1, 2025).

The present case does not suffer from that analytical deficiency. Unlike the ALJs in the foregoing decisions, the instant ALJ did not simply identify mild paragraph B limitations, recite the standard SSR 96-8p boilerplate, and proceed to an RFC discussion devoid of any consideration of Claimant's mental functioning. Rather, after evaluating the paragraph B criteria, the ALJ discussed the consultative psychological evaluation performed by Tara Bias, explained why he found her opinions generally persuasive, evaluated the prior administrative findings of the state agency psychological consultants, and discussed Claimant's reported daily activities, subjective complaints, and routine mental health treatment. (Tr. 99-100). The ALJ further explained that Claimant's treatment consisted primarily of medication prescribed by her primary care provider, that she repeatedly reported improvement with Cymbalta, and that treatment records consistently documented normal mood and affect, intact memory, appropriate judgment, and otherwise unremarkable mental status findings. (Tr. 99-100, 103-11). Finally, the ALJ expressly stated that he considered all of Claimant's medically determinable impairments, including those that were not severe, when assessing her RFC. (Tr. 100).

Admittedly, the ALJ did not expressly discuss each paragraph B finding under a

separate mental RFC heading or specifically state why each mild limitation did not warrant a corresponding work-related restriction. However, neither SSR 96-8p nor the authorities cited by Claimant impose such a requirement. Rather, those decisions require sufficient analysis to permit meaningful judicial review. Here, unlike *Shank* and its progeny, the Court is not left to speculate as to why the ALJ omitted mental restrictions from the RFC. Reading the decision as a whole, the ALJ's reasoning is reasonably discernible: he concluded that Claimant's mild mental limitations, viewed in light of the objective medical evidence, conservative treatment history, persuasive psychological opinion evidence, and Claimant's reported functioning, did not result in additional work-related mental limitations. Whether that conclusion is ultimately supported by substantial evidence is addressed below.

Substantial evidence supports the ALJ's conclusion that Claimant's non-severe mental impairments did not warrant additional work-related mental limitations. In reaching that conclusion, the ALJ relied upon several categories of evidence, each of which supports his determination.

First, the ALJ reasonably relied upon the opinion evidence. The ALJ found the consultative psychological opinion generally persuasive because it was consistent with the minimal abnormalities observed during Claimant's examination, the absence of regular treatment from a mental health specialist, Claimant's reliance upon medication prescribed by her primary care provider, the effectiveness of that medication, and the overall record. (Tr. 99). Although Bias diagnosed Claimant with major depressive disorder, unspecified trauma and stressor related disorder, and somatic symptom disorder with predominant pain, her examination revealed that Claimant was cooperative; maintained good eye contact; exhibited coherent and connected thought

processes; possessed intact immediate, recent, and remote memory; demonstrated normal concentration and persistence; and remained capable of independently managing her own funds. (Tr. 913-15). While Bias opined that Claimant's social functioning was mildly impaired and that her pace was somewhat slow, the ALJ reasonably concluded that those findings supported no more than mild functional limitations. (Tr. 99-100).

The ALJ likewise considered the prior administrative findings of the state agency psychological consultants. Although the ALJ did not wholly adopt Dr. Boggess's paragraph B findings, he explained that additional evidence received after the initial determination supported finding mild limitations in all four functional areas while continuing to support the conclusion that Claimant's mental impairments remained non-severe. (Tr. 99-100). Thus, contrary to Claimant's assertion, the ALJ did not ignore the psychological opinion evidence when formulating the RFC; rather, he expressly discussed it and explained the weight afforded to it.

Second, the ALJ reasonably relied upon Claimant's longitudinal treatment history. As discussed above, Claimant's mental health treatment throughout the relevant period remained conservative. Rather than receiving specialized psychiatric treatment, counseling, or inpatient care, Claimant's mental impairments were managed with Cymbalta prescribed by her primary care provider. (Tr. 939-40, 946-47, 953-54, 960-61, 967-68, 1024, 1030, 1036-37, 1044-45, 1050-51, 1126, 1280-81). Treatment records consistently documented negative depression screenings, reports that Cymbalta effectively controlled her symptoms, normal mood and affect, intact recent and remote memory, appropriate judgment, and normal orientation. (*Id.*). The ALJ reasonably concluded that this longitudinal evidence supported only mild mental limitations.

Third, the ALJ considered Claimant's own reports of her functioning. Although

Claimant alleged difficulties with memory, concentration, following instructions, handling stress, and adapting to changes in routine, she also consistently reported living independently, preparing simple meals, performing light household chores, driving, shopping, managing her own finances, caring for pets, reading, watching television, and maintaining relationships with family members. (Tr. 100, 103-05, 378-83, 423-28). The ALJ was entitled to consider these reported activities when evaluating whether Claimant's mental impairments produced work-related functional limitations. *See* 20 C.F.R. § 404.1529(c)(3).

Finally, the ALJ considered Claimant's hearing testimony. Claimant testified that she suffered from depression, decreased memory, difficulty concentrating, and the stressful nature of her former employment. (Tr. 143-46). However, she primarily attributed her inability to continue working to her physical impairments, including chronic pain, COPD, pulmonary fibrosis, and limitations in standing, walking, sitting, and using her right arm. (Tr. 133-46).

Accordingly, although Claimant identifies evidence that could support a different conclusion, the Court may not reweigh the evidence or substitute its judgment for that of the Commissioner. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). The ALJ adequately explained how he considered Claimant's non-severe mental impairments and substantial evidence supports his determination that those impairments did not warrant additional mental RFC restrictions. Thus, remand is unwarranted.

Claimant further argues that, because the ALJ found she could return to her past skilled work as a customer service representative, the omission of additional mental RFC analysis cannot be considered harmless. (ECF No. 4 at 8-11). The undersigned agrees that an ALJ should carefully evaluate the effect of mental impairments when determining

whether a claimant remains capable of performing skilled work. *See* SSR 85-15. However, that principle does not alter the outcome here.

Unlike the decisions cited by Claimant, the ALJ did not simply conclude that Claimant could perform her past skilled work without first evaluating the evidence concerning her mental impairments. As discussed above, the ALJ considered the consultative psychological examination, the state agency psychological findings, Claimant's routine treatment history, her reported daily activities, and her hearing testimony before determining that her mental impairments were non-severe and imposed no additional work-related functional limitations. (Tr. 99-111).

Thus, the ALJ necessarily determined that the evidence did not establish mental limitations affecting Claimant's ability to perform the mental demands of her past relevant work. The ALJ could have more explicitly connected that conclusion to the mental demands of Claimant's skilled past work. Nevertheless, substantial evidence review does not require a perfect opinion. Rather, the Court must determine whether the ALJ built an accurate and logical bridge between the evidence and the RFC assessment and whether the basis for the decision is reasonably discernible. *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016); *Britt*, 860 F. App'x at 262. Reading the decision as a whole, the undersigned concludes that standard is satisfied.

Accordingly, the undersigned **FINDS** that the ALJ adequately explained his consideration of Claimant's non-severe mental impairments and that substantial evidence supports his determination that those impairments did not warrant additional mental RFC restrictions.

## VIII. Proposal and Recommendations

Based on the foregoing, the undersigned United States Magistrate Judge

respectfully **PROPOSES** that the presiding District Judge confirm and accept the findings herein and **RECOMMENDS** that the District Judge **DENY** Plaintiff's request for judgment on the pleadings, (ECF No. 4); **GRANT** Defendant's request to affirm the decision of the Commissioner, (ECF No. 5); and **DISMISS** this action from the docket of the Court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Irene C. Berger, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown. Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Judge and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to file this "Proposed Findings and Recommendations" and to provide a copy of the same to counsel of record.

**FILED: July 22, 2026**

Omar J. Aboulhosn
United States Magistrate Judge